## Bowling's Adm'r. *vs* Bowling, *et al.*     <span style="float:right">CHANCERY.</span>

ERROR TO THE MASON CIRCUIT.     <span style="float:right">Case 9.</span>

*Slaves, life estate.   Remainder.   Equitable Jurisdiction.*

CHIEF JUSTICE EWING delivered the opinion of the Court. <span style="float:right">*Sept. 22.*</span>

In 1809, Robert Bowling made his last will and testa- <span style="float:right">The case stated.</span> ment, and died shortly afterwards, by which he devised all his estate, embracing a number of slaves, to his wife, Mary Bowling, during her life, the remainder to his two children, Samuel and Nancy. Nancy afterwards married Thornton Hord, and the widow finding that the negro woman, Hannah, devised to her, was high tempered and unmanageable, and frequently ran away, delivered her to

her son-in-law and daughter, as more capable of managing them; also delivered to Hord and wife a negro girl, surrendering her life estate in both. Both Hannah and the girl frequently ran away from Hord, and making efforts to escape to Ohio, and Hannah succeeding once or twice in getting to Cincinnati, they were apprehended at great costs and expense, and much trouble to Hord, who after several escapes, sold Sarah to some person unknown, who removed her out of the State, and sold Hannah to one Anderson, whose executor sold her to some one, who removed her to Mississippi, where she died, leaving two children living. Samuel Bowling died much involved in debt, and his remainder in the slaves in the possession of his mother, who is still living, having been sold by his administrator, for the payment thereof, this bill was filed by him against Mary Bowling, the widow and tenant for life, and Thornton Hord and wife, to recover the value of Samuel Bowling's interest in remainder in the slaves sold, and their issue. The bill was dismissed, and the administrator has appealed to this Court.

There is no ground for rendering the widow liable. She had the unquestionable right to surrender her life estate, and deliver over the two slaves to her son-in-law and daughter, who was tenant in remainder as to a moiety, and who resided in the same county and state, and still continue to do so. There is no evidence that she acted otherwise than in good faith in doing so, nor is there any evidence that she contemplated a sale of the slaves by Hord, in or out of the State, or that she in any degree participated in the sale, or gave her consent to the same. She can on no principle, be rendered responsible for the act of Hord, over whom she could exercise no legal control, after she had surrendered her life estate, which she surely might do, under the circumstances of this case. Nor do we think that Hord can be made responsible at this time, in this form of proceeding.

Presuming that administration was taken on the estate of Samuel Bowling, within reasonable time after his death, it appears that he lived with his mother, and in the same neighborhood several years after the sale by Hord, of the slaves in question. He must have been well

The holder of a life estate in slaves, may rightfully surrender such estate to one of two tenants in remainder, and is not reponsible for the disposition afterwards made of such slaves.

apprized, not only of the surrender and delivery of the slaves to Hord and wife, and of the terms thereof, but also of the sale of the same by Hord.   And though one of the slaves and her children remained in the nighbor-hood for some years after her sale, he took no step to se-cure them against removal, or to seek redress against Hord, after their removal.   Nor do we hear of any ob-jection to the sale, or complaint on his part, during his life.   It may. therefore, fairly be implied, that he acqui-esced in, and tacitly assented to the sale, as well as the surrender by his mother.   The probability is, that it was understood, tacitly or expressly, that Samuel was to re-ceive out of the slaves that remained with his mother, in the partition of the slave property after her death, an equivalent in value, for the slaves alotted to Hord and wife, and looking to remuneration in this manner, that he assented to the surrender and sale by Hord.   This presumption being indulged, and it may reasonably be indulged, from the facts and circumstances attending the case, the administrator has no right, in any form of pro-ceeding, to make Hord responsible for the value of Sam-uel Bowling's interest in the slaves thus surrendered and sold.

Nor can he at this time recover, or subject to sale, an equivalent interest or share of Mrs. Hord in the residue of the slaves.   She answers and contends for her equal moiety in remainder in each and all the slaves in possess-ion of her mother for life, and alledges and proves, that her husband is improvident and insolvent, and insists on her paramount equitable right to a settlement out of those slaves, and that her interest, which is not more than a competent settlement, ought not to be diminished, as the means of satisfying Samuel Bowling for the slaves received and sold by her husband.   Her claim is valid, and her defence sustained.   As before settled by this Court, had her husband actually assigned to S. Bowling her interest in any portion of the remainder of the slaves, neither S. Bowling nor his representative, could sustain such assignment, against her paramount right to a settle-ment, *Hord* vs *Hord, &c.* (5 *B. Monroe,* 81,) and the authorities referred to.

*The interest in remainder in slaves belonging to the wife, can-not be subjected to the payment of the debts of the husband un-til the wife be suitably provi-ded for.—*

BOWLING'S AD'R.
        vs
BOWLING, et al.

—But if the hus-
band survive the
wife, then such
interest may be
subjected.

But Hord may survive his wife, in which event the in-
terest of his wife will survive and accrue to him, and in
that event, in the partition of the slaves between him and
Samuel Bowling, the latter, or his representative, will
have the equitable right, in the division, to an equivalent
in value, out of the slaves divided, for the slaves sold and
disposed of by Hord. But the interest of Hord, depend-
ing as it does, upon a double contingency, the death of
the widow, and his survivorship of his wife, cannot now
be alotted to the administrator of S. Bowling, nor sold
by the decree of the Chancellor, as in effect was deter-
mined by this Court, in the case of *Hord* vs *Hord, supra.*

The Chancellor
may interfere at
the instance of
one holding the
interest in re-
mainder     in
slaves, and pre-
vent tenant for
life or his ven-
dee, from remo-
ving slaves so
held, out of the
state—but after
a removal of
property so held,
the Chancellor
cannot interfere,
especially where
the life estate is
hanging.

Besides, if the sale by Hord was a wrong unauthorized,
and unapproved by Samuel Bowling, we are not prepar-
ed to concede that a Court of Equity can afford present
relief for the wrong, after it has occurred. There is no
doubt that Samuel Bowling, or his represntative, *before*
the removal of the slaves, and while they were within the
jurisdiction and power of the Court, might have prosecu-
ted a bill of *quia timet,* as a precautionary measure
against any person holding the estate for life, and upon
proper allegations and proof as to an *intended removal,*
might have obtained an order restraining their removal,
until security was given to have them forthcoming to be
divided upon the termination of the estate for life. But
it does not follow, that *after* the *wrong* has happened by
the removal, that the Chancellor will interfere, to redress
the wrong, *before the right to a partition has accrued.*

The Chancellor
may   restrain
waste, but after
it is done, can-
not redress it.

The Chancellor will restrain waste, or a trespass upon
real estate, and interpose and exercise his powers to pre
vent many wrongs and injuries that are threatened, but
after the waste or trespass has been committed, or wrong
has accrued, will not interpose to renress the injury.

Nor can jurisdiction be derived in the case before us,
from the statute of 1839, (3 *Stat. Laws,* 554.) That stat-
ute applies only to those *holding* a life estate in slaves,
and not to those who *have held* and *parted* with the life
estate before the enactment of the law, as was the case of
the slaves in question. Those *holding* a life estate, are
required to list them with the County Court, and against

such only, is the Chancellor authorized to enforce per-formance.

Upon the whole, we are satisfied that the decree of the Circuit Court should be affirmed, and the same is affirm-ed, with costs.

*Payne and Bealty* for plaintiff: *Hord and McClung Taylor* for defendants.